The STATE of Ohio, Appellee,

v.

DANIELS et al., Appellants.

[Cite as *State v. Daniels* (1993), 92 Ohio App.3d 473.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–920421, C–920430 and C–920447.

Decided Oct. 27, 1993.

474

476

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for appellee.

*Daniel F. Burke,* for appellant Arnold Daniels.

*Teresa L. Cunningham,* for appellant Nathaniel Jackson.

*Hal R. Arenstein,* for appellant Maurice Minor.

---

*Per Curiam.*

These causes came on to be heard upon the appeals, the transcripts of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, and the briefs and arguments of counsel. We have consolidated these appeals for purposes of this decision.

Defendants-appellants, Nathaniel Jackson, Maurice Minor and Arnold Daniels, were each indicted on one count of aggravated murder in violation of R.C. 2903.01, with an accompanying firearm specification. Following a jury trial, Jackson, Daniels and Minor were convicted on the charges of aggravated murder; Jackson and Daniels were convicted on the firearm specifications; and Minor was acquitted on the firearm specification. All three were sentenced to life imprisonment with the possibility of parole after twenty years. Jackson and Daniels each received an additional three-year term of imprisonment on the firearm specifications. These appeals followed.

On appeal, Jackson, Daniels and Minor raise several assignments of error. Where their assignments of error are similar, they will be discussed together. Based upon our review of the assignments of error and because of our holdings on them, we affirm the judgments of the trial court.

A review of the record in this case reveals the following. Timothy Murrell headed a gang that distributed crack cocaine. Jackson was "second in command" in the gang. In October 1990, Jackson, Timothy Murrell, Marvin Murrell and Ronald Webster allegedly abducted James Foster at gunpoint, transported him to a remote area, beat him, doused him with gasoline, and set him on fire. Foster survived the attack. Based upon these allegations, Jackson and the others were indicted for kidnapping, felonious assault and aggravated arson. When the original prosecution of the charges ended in a mistrial, a second trial was

scheduled to begin on July 10, 1991. However, on July 6, 1991, Foster was shot and killed. The charges at issue in these appeals are based upon the death of Foster.

Jackson apparently determined that if Foster were dead and thus unable to testify, the charges filed against him with respect to the abduction, beating and burning of Foster would be dismissed. Accordingly, Jackson contacted Roosevelt Barron to kill Foster. Barron, who sold drugs purchased from Jackson, owed Jackson a large sum of money. Jackson offered to forgive Barron's debt if Barron killed Foster. In addition, Jackson threatened to harm Barron's family if he refused to cooperate. Barron eventually agreed to kill Foster.

Jackson provided Barron with a photograph of Foster because Barron did not know Foster. In addition, Jackson arranged for Barron to be accompanied by someone familiar with Foster as Barron searched for the victim. On several occasions, that companion was Daniels.

On July 6, 1991, Minor arrived at Barron's house and informed Barron that Jackson wanted to talk to him. Because Barron did not have a phone, the two went to Minor's house and called Jackson. Jackson informed Barron that Foster was in the LA Sound Center on Colerain Avenue and that Minor would drive Barron to the store so that he could kill Foster. On the way to Colerain Avenue, Minor noticed that Barron was nervous. In an effort to calm Barron's nerves, Minor offered him marijuana and alcohol. The two drank and smoked while they discussed how Barron would shoot and kill Foster. Minor dropped Barron off at a shop near the LA Sound Center and instructed Barron to wait for Daniels.

Daniels appeared a few moments later, gave Barron a description of what Foster was wearing, and handed Barron a gun. Barron walked to the LA Sound Center, spotted Foster and returned to Daniels. Disappointed to learn that Barron had not shot Foster, Daniels instructed Barron to return to the store, shoot Foster and then get into Daniels's car.

Barron returned to the LA Sound Center, located Foster, walked up behind him and shot him once in the back of the head. Foster died immediately. Barron exited the store, jumped into Daniels's car and informed Daniels that he had killed Foster. The two drove to the home of Janice Calloway, where Jackson was residing while serving a sentence under Hamilton County's home-incarceration program.

Upon entering Calloway's house, Barron informed Jackson that he had killed Foster. Jackson turned to Timothy Murrell and stated, "We got him, he got him, we ain't got to worry about him going to court, got his ass, ain't got to worry about him no more." Jackson then gave Barron a change of clothes and instructed Minor to drive Barron home.

Minor drove Barron to Barron's house and told him to shave off his mustache and beard. Minor then told Barron to come to Minor's house, where he had arranged to have Barron's hair cut. Minor telephoned Jackson and then gave Barron $200 to pay for the hair cut and to take his girlfriend to a movie.

Ultimately, Barron, Daniels, Minor and Jackson were arrested and charged with aggravated murder. Pursuant to a plea agreement, Barron agreed to testify against the others.

## I

Daniels, in his fourth assignment of error, Minor, in his third assignment of error, and Jackson, in his ninth assignment of error, contend that the trial court erred in granting the prosecution's motion for a protective order for several of its witnesses. In its motion, the prosecution requested that the names and addresses of twenty-four of its witnesses be withheld from the defendants until the witnesses testified at trial.

The right to confront witnesses is guaranteed to an accused through the Sixth and Fourteenth Amendments to the United States Constitution, and by Section 10, Article I of the Ohio Constitution. *State v. Williams* (1986), 23 Ohio St.3d 16, 23 OBR 13, 490 N.E.2d 906, certiorari denied (1987), 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699. However, this right is legitimately constrained by Crim.R. 16(B)(1)(e), which permits the trial court to issue an order allowing the state to withhold the name and address of a witness if the state certifies that disclosure may subject the witness to physical harm or coercion. *State v. Parson* (1983), 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689; *State v. Martin* (Oct. 10, 1990), Hamilton App. No. C–890427, unreported, 1990 WL 151709. Certification by the state under Crim.R. 16 is not satisfied by the prosecutor's merely stating his conclusion that a witness might be subject to harm, but requires the state's reasons for requesting witness protection to appear on the record. *State v. Williams, supra; State v. Owens* (1975), 51 Ohio App.2d 132, 5 O.O.3d 290, 366 N.E.2d 1367. The prosecution must show the existence of an undue risk of harm to the witness to be relieved of its obligation to disclose the name of its witness. *State v. Gillard* (1988), 40 Ohio St.3d 226, 533 N.E.2d 272, certiorari denied (1989), 492 U.S. 925, 109 S.Ct. 3263, 106 L.Ed.2d 608. Finally, where relief from discovery is sought, the procedure must be *ex parte* to prevent the defense from learning the information sought to be concealed, the identities of the endangered witnesses. *Id.*

In support of its motion for a protective order, the prosecution indicated to the court [1] that although the defendants in this case were in custody, the police were investigating other individuals for their involvement in the shooting death of Foster. The prosecution also informed the trial court that the murder of Foster was a "hit style execution" of a person who was scheduled to testify against Jackson and some of his known associates at trial, and that Foster was murdered to prevent him from testifying against them. The prosecution then revealed to the court that a portion of the testimony given to the grand jury in this case had "leaked out."

The trial court then agreed to hear the rest of the state's motion in chambers without the presence of the defendants or their counsel in accordance with *State v. Gillard, supra.* In chambers, an assistant prosecutor with the Hamilton County Prosecutor's Office testified regarding the relationship between the Murrells and Jackson; the kidnapping, beating and burning of Foster by Jackson and the Murrells; the concerns expressed by Foster and Kevin Carlton (who was kidnapped and beaten along with Foster, but who escaped before the burning) regarding their safety throughout the proceedings surrounding the first trial; the fact that neither Foster nor Carlton could be reached directly throughout the proceedings in the first prosecution; the threats received by Carlton regarding his intention to testify against Jackson and his associates in the first trial; and the fact that Carlton left the state prior to the first trial and failed to return to testify. A sergeant with the Hamilton County Sheriff's Department testified regarding the fact that Foster was killed to prevent him from testifying against Jackson and his associates; that Jackson was the "enforcer" in Tim Murrell's drug organization; that Tim Murrell was not incarcerated at that time; that the defendants had been in contact with each other while they were incarcerated; and that the defendants were able to talk to people outside the prison system. Finally, the sergeant stated that he believed that the lives of the state's witnesses would be in danger if their names and addresses were revealed prior to trial. In addition, the transcript of Barron's attorney's testimony regarding the fact that grand-jury testimony had been released was admitted.

The trial court found that the prosecution had presented "overwhelming evidence that the protective order should issue" and granted the state's motion. We hold that, under the circumstances of this case, the prosecution demonstrated the existence of an undue risk of harm to its witnesses if their identities were revealed to the defense prior to trial. Furthermore, these witnesses' identities were not absolutely withheld since they were present at trial and subject to cross-examination. See *State v. Williams, supra; State v. Martin, supra.* The

---

1. The judge who conducted the trial in this case referred the state's motion for relief from discovery under Crim.R. 16(B)(1)(e) to another judge on the same court in accordance with *State v. Gillard, supra,* paragraph one of the syllabus.

defendants have failed to show any prejudice to their ability to defend themselves resulting from the trial court's refusal to release the names and addresses of these witnesses prior to trial. See *State v. Williams, supra.*

The defendants have failed to demonstrate that the issuance of the protective order by the court below was an abuse of discretion. We, therefore, find no merit in Daniels's fourth assignment of error, Minor's third assignment of error, or Jackson's ninth assignment of error.

## II

Daniels and Minor, in their fifth and first assignments of error respectively, contend that a letter written by Jackson was improperly admitted into evidence during trial. The trial court permitted the prosecution to introduce a letter found in Jackson's prison cell which was written by Jackson approximately nine months after Foster was killed. The letter apparently was directed to Minor and appeared to suggest how Minor should testify in order to win an acquittal. However, the letter was never sent to either Minor or Daniels, both of whom objected to the admission of the letter into evidence as inadmissible hearsay.

Evid.R. 801(D)(2)(e) sets forth the co-conspirator exception to the hearsay rule as follows: "A statement is not hearsay if: * * * [t]he statement is offered against a party and is * * * a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." An out-of-court declaration of a co-conspirator is admissible and not hearsay when five elements are established: (1) the existence of a conspiracy; (2) the defendant's participation in the conspiracy; (3) the declarant's participation in the conspiracy; (4) that the statement was made during the course of the conspiracy; and (5) that the statement was made in furtherance of the conspiracy. *State v. Banks* (July 18, 1990), Hamilton App. No. C–890219, unreported, 1990 WL 99948.

Independent evidence of the first three elements listed in *Banks* was presented at trial through the testimony of Barron. Barron testified as to the existence of the conspiracy to kill Foster to prevent him from testifying against Jackson and his associates, and as to the participation in the conspiracy of Daniels, Minor and Jackson.

As to the fourth and fifth elements listed in *Banks,* that the statement of the co-conspirator be made during the course of the conspiracy and in furtherance of the conspiracy, we note the following. A conspiracy to commit a crime does not necessarily end with the commission of the crime. *State v. Shelton* (1977), 51 Ohio St.2d 68, 5 O.O.3d 42, 364 N.E.2d 1152, paragraph one of the

syllabus, vacated in part (1978), 438 U.S. 909, 98 S.Ct. 3133, 57 L.Ed.2d 1153. For this reason, "a declaration of a conspirator, made subsequent to the actual commission of the crime, may be admissible against any co-conspirator if it was made while the conspirators were still concerned with the concealment of their criminal conduct or their identity." *Id.* at paragraph two of the syllabus.

The admission of evidence of the acts and declarations of co-conspirators subsequent to the commission of the crime charged is not erroneous despite the fact that the crime already has been committed "if the acts and declarations occurred during the pendency of the unlawful enterprise and in furtherance of the common object." *State v. DeRighter* (1945), 145 Ohio St. 552, 558, 31 O.O. 194, 196, 62 N.E.2d 332, 335. The theory for the admission of evidence of the acts and declarations of a co-conspirator made after the crime charged has been committed is that "persons who conspire to commit a crime, and who do commit a crime, are as much concerned, after the crime, with their freedom from apprehension, as they were concerned, before the crime, with its commission; the conspiracy to commit the crime devolves after the commission thereof into a conspiracy to avoid arrest and implication." *Id.; State v. Cacic* (May 26, 1983), Cuyahoga App. Nos. 44635, 44636 and 44738, unreported, 1983 WL 3037.

We hold that the letter written by Jackson nearly nine months after the killing of Foster was a statement made during the course and in furtherance of the conspiracy to kill Foster. Although the crime of murder had already been committed, Jackson's letter suggesting how Minor should testify was motivated by a desire to avoid conviction for the crime. Under these circumstances, the conspiracy to kill Foster continued for the purpose of taking measures to prevent or defeat prosecution for the crime of murder. The letter written during the course of the conspiracy and in furtherance of the conspiracy was properly admitted against Daniels and Minor. See *State. v. Cacic, supra* (statement made by one co-conspirator at least seven months after the crime was committed was admissible against other co-conspirators); *State v. Jacobs* (Mo.App.1991), 813 S.W.2d 318 (three letters written by appellant's co-conspirators after the crime had been committed were properly admitted into evidence). Cf. *State v. Duerr* (1982), 8 Ohio App.3d 404, 8 OBR 526, 457 N.E.2d 843, certiorari denied (1983), 464 U.S. 816, 104 S.Ct. 74, 78 L.Ed.2d 86 (where the crime has already been committed, an out-of-court statement of a co-conspirator of the defendant which confesses his complicity in the crime and implicates the defendant is not a statement made during the course and in furtherance of the conspiracy). Accordingly, Daniels's fifth assignment of error and Minor's first assignment of error are without merit.

■ Jackson, in his fourth assignment of error, contends that he was denied the effective assistance of trial counsel because his counsel failed to file a motion

to suppress the letter found in his prison cell. We find no merit in this assignment of error.

■ Counsel's performance at trial will not be deemed ineffective "unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768. Jackson's counsel's failure to file a motion to suppress the letter found in Jackson's cell which attempted to fabricate testimony between co-conspirators does not demonstrate ineffective assistance of counsel where such an act would have been futile. The letter, as admitted against Jackson, the author, did not constitute inadmissible hearsay under Evid.R. 801(D)(2)(a). That rule provides that a statement made by a party and offered against that party is not hearsay. Therefore, a motion by Jackson's counsel to suppress the admission of a letter written by Jackson in the course and in furtherance of the conspiracy would have been denied. Jackson has failed to demonstrate that he was denied the effective assistance of trial counsel.

### III

■ Daniels, Minor and Jackson argue that their motions for separate trials, made prior to the start of the trial and throughout the trial, should have been granted. We find no error in the trial court's refusal to grant the defendants' motions for separate trials.

Crim.R. 14 states:

"If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."

Joinder of defendants and the avoidance of multiple trials is favored in the law because joinder "conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." *State v. Thomas* (1980), 61 Ohio St.2d 223, 225, 15 O.O.3d 234, 235–236, 400 N.E.2d 401, 404; *State v. Bordeau* (Apr. 7, 1988), Franklin App. No. 87AP–688, unreported, 1988 WL 37541. Absent a clear showing of abuse of discretion, a trial court's decision regarding severance will not be disturbed. *State v. Torres* (1981), 66 Ohio St.2d 340, 20 O.O.3d 313, 421 N.E.2d 1288. Furthermore, a defendant claiming error in the trial court's denial of separate

trials has the burden of affirmatively showing that his rights were prejudiced. *Id.*

Initially, Daniels and Minor argue that the trial court erred in refusing to grant their motions for separate trials because they were denied their Sixth Amendment right of confrontation, when Jackson did not testify at trial, by the admission of the letters written by Jackson inculpating them. In *Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, the United States Supreme Court held that, in a joint trial, the admission of a co-defendant's confession that implicated the defendant, where the co-defendant did not take the stand, denied the defendant his constitutional right of confrontation and constituted prejudicial error. In reliance upon *Bruton,* the Ohio Supreme Court held that "[a]n accused's right of cross-examination secured by the confrontation clause of the Sixth Amendment is violated in a joint trial with a non-testifying codefendant by the admission of extrajudicial statements made by the codefendant inculpating the accused." *State v. Moritz* (1980), 63 Ohio St.2d 150, 17 O.O.3d 92, 407 N.E.2d 1268, paragraph one of the syllabus.

Daniels's and Minor's reliance upon *Bruton* and *Moritz* is misplaced. In those cases, the United States Supreme Court and the Ohio Supreme Court agreed that the accused's right of confrontation was violated where the trial court admitted as evidence against the accused in a joint trial hearsay statements by a co-defendant that would not have been admissible against the accused had the defendants been severed for trial and had the co-defendant not taken the stand. In this case, although Jackson did not take the stand, the letter written by him inculpating Daniels and Minor was not hearsay under Evid.R. 801(D)(2)(e), and was, therefore, admissible against Daniels and Minor with no impingement upon their constitutional right of confrontation. See *State v. Cacic, supra.*

Daniels and Minor also argue that their motions for separate trials should have been granted because they were prejudiced by Jackson's actions at trial. Jackson apparently mouthed threats to Barron while Barron was on the stand. Daniels and Minor argue that this behavior by Jackson during trial prejudiced their right to a fair trial.

In *State v. Kuehne* (Apr. 22, 1992), Hamilton App. Nos. C–910454 and C–910455, unreported, 1992 WL 81281, this court held that the trial court should have granted separate trials for several reasons, stating, *inter alia,* that "the record reveals that Judy may well have suffered actual prejudice as a result of Sandy's behavior at trial." Although we noted that Sandy was cited for contempt of court and fined, the nature of his prejudicial "behavior" was not explained in the decision.

In this case, Jackson mouthed threats to a witness on the stand. The trial court was not aware of these threats until they were reported at a later stage of

the trial. There is no indication in the record that any jurors observed Jackson making threats or that they were made aware of any threats. Furthermore, Jackson's actions did not result in a citation for contempt or a fine. Under these circumstances, we are not persuaded that Daniels and Minor suffered actual prejudice to their rights as a result of Jackson's behavior during trial.

Finally, the defendants argue that they were precluded from raising antagonistic defenses because of the trial court's refusal to grant them separate trials. Defenses are antagonistic where each defendant is trying to exculpate himself and inculpate his co-defendant. *Romano v. State* (Okla.Crim.App.1992), 827 P.2d 1335. Antagonistic defenses can prejudice co-defendants to such a degree that they are denied a fair trial. *State v. Brown* (Oct. 11, 1985), Montgomery App. No. CA 8560, unreported, 1985 WL 6943. Severance, however, is not mandated whenever co-defendants have conflicting defenses. *Zafiro v. United States* (1993), 506 U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317.

There is nothing in the record before this court to indicate that the defendants intended to raise antagonistic defenses. Rather, it appears clear that from the start of this case the defendants maintained that they had nothing to do with the killing of Foster, that Barron acted solely on his own, and that Barron was lying. We, therefore, hold that the trial court's refusal to grant separate trials did not prejudice the defendants' rights to present a defense.

Finding no merit in the above arguments, we hold that the trial court did not err in refusing to grant separate trials for the defendants. We, therefore, overrule Daniels's first assignment of error, Minor's second assignment of error, and Jackson's first assignment of error.

## IV

Daniels, Minor and Jackson contend that the trial court erred in refusing to grant their motions for a mistrial when it appeared that the jury had been "tampered with" and when the jurors expressed concern over the defendants' access to their juror questionnaires. We find no error.

An accused is entitled to a trial before an impartial, unprejudiced, and unbiased jury. *State v. Hepburn* (May 7, 1992), Cuyahoga App. No. 60519, unreported, 1992 WL 95740. A new trial may be granted for the misconduct of the jury where the substantial rights of the accused have been materially affected. Crim.R. 33(A). However, the determination of whether a jury should be discharged and a mistrial declared lies within the sound discretion of the trial court. *State v. Hepburn, supra.* A mistrial may be granted "when there is a 'manifest necessity' to do so, or to serve 'the ends of public justice.'" *State v.*

*Evans* (Feb. 14, 1992), Lucas App. No. L–91–049, unreported, 1992 WL 25718, citing *State v. Abboud* (1983), 13 Ohio App.3d 62, 13 OBR 66, 468 N.E.2d 155.

On a lunch break during the trial of Daniels, Minor and Jackson, a female member of the jury noticed two men "following" two other female members of the jury. She recognized the two men as observers in the back of the courtroom during the trial. She immediately informed the two other women that she believed that they were being followed. After the lunch break, she notified the court of what had happened.

The trial court questioned the female juror who observed the men following other members of the jury about what she had seen and what effect it had on her. She responded that she had not thought too much about it, that she thought it was odd, so she decided to bring it to the court's attention, and that she did not think that it would affect her ability to sit as an impartial, unbiased juror. The trial court then questioned the jury as a whole. When polled separately, the jurors responded that this incident would not affect their ability to decide the case in a fair manner.

The defendants then moved for a mistrial, which the trial court denied. Based upon the responses of the jurors when questioned about this incident, we hold that the trial court did not abuse its discretion in refusing to grant the defendants' motions for a mistrial at this stage of the proceedings.

Later in the proceedings, one of the jurors indicated to the trial court that several of the jurors were concerned about the defendants' having access to their jury questionnaires. The jurors apparently thought that the defendants were reading the questionnaires that they had filled out when they were called for jury duty. The trial court questioned the juror about this. She responded that she did not believe that this would affect her ability to remain unbiased about this case. The jurors were then questioned as a whole. They indicated that, despite the fact that the defendants may have looked at their questionnaires, they could remain fair to all the defendants.

The defendants argue that the jury was biased against them because they were afraid of retaliation from the defendants "when they get out." The state counters that such an argument is illogical; if the jury was afraid of the defendants it would have acquitted them, not found them guilty.

We believe that the trial court handled this situation in an appropriate manner and determined that the jurors were not "tainted," despite the fact that they had expressed concern over the defendants' access to their names and addresses. See *State v. Queen* (Mar. 10, 1993), Medina App. No. 2094, unreported, 1993 WL 62118. We, therefore, hold that the trial court did not abuse its discretion in refusing to order a mistrial upon the defendants' motions.

Accordingly, we find no merit in Daniels's second assignment of error, Minor's fifth assignment of error, or Jackson's eighth assignment of error.

## V

Daniels, in his third assignment of error, and Minor, in his fourth assignment of error, contend that they were denied a fair trial due to the fact that an assistant prosecuting attorney for Hamilton County was permitted to testify during their trial. A prosecuting attorney should avoid being a witness in a criminal prosecution. However, such testimony may be permitted in extraordinary circumstances and for compelling reasons, where the evidence is not otherwise available. *State v. Coleman* (1989), 45 Ohio St.3d 298, 544 N.E.2d 622, certiorari denied (1990), 493 U.S. 1051, 110 S.Ct. 855, 107 L.Ed.2d 849, citing *United States v. Johnston* (C.A.7, 1982), 690 F.2d 638.

In this case, the first assistant prosecutor in the juvenile division testified as to the general manner in which juveniles over the age of fifteen charged with murder are prosecuted, including binding them over to adult court. This testimony was admitted to rebut inferences by counsel for the defendants that Barron received special treatment or unusual treatment by the juvenile department of the prosecutor's office in order to obtain his testimony against the defendants.

Because the assistant prosecutor in the juvenile division was not engaged as active counsel in these prosecutions, and, in fact, personally took no part in the trial of these cases, and because she could provide the most accurate testimony on the issues on which she was called to testify, we hold that her testimony was admissible in these cases. We, therefore, find no merit in Daniels's and Minor's arguments that they were denied a fair trial due to the assistant prosecutor's testimony.

## VI

Daniels, in his sixth and seventh assignments of error, and Jackson, in his third and eleventh assignments of error, contend that their convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. The Supreme Court of Ohio has stated the following:

"In a criminal case a verdict can not be said as a matter of law to be manifestly against the weight or sufficiency of the evidence, where substantial evidence is offered by the state in support of all of the elements of the offenses charged, and if such evidence was of sufficient probative value to sustain a conviction, the reviewing court will not reverse on the sufficiency or weight of evidence." *State*

*v. Barnes* (1986), 25 Ohio St.3d 203, 209, 25 OBR 266, 271–272, 495 N.E.2d 922, 927, certiorari denied (1987), 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 701.

Daniels and Jackson were each convicted of aggravated murder and a firearm specification. R.C. 2903.01(A) provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another." Substantial evidence was presented by the state in support of all of the elements of aggravated murder as proscribed by R.C. 2903.01(A) with respect to both Daniels and Jackson. Furthermore, the evidence presented by the state was of sufficient probative value to sustain the convictions for aggravated murder despite the existence of conflicts in Barron's testimony. We, therefore, will not reverse the convictions of Daniels and Jackson for aggravated murder on the grounds that their convictions were not supported by sufficient evidence or that their convictions were against the manifest weight of the evidence.

Similarly, we will not reverse the convictions of Daniels and Jackson for aggravated murder on the trial court's refusal to grant the defendants' Crim.R. 29 motions for acquittal. The trial court properly denied these motions where the evidence presented by the state was such that reasonable minds could reach different conclusions as to whether each material element of the crime of aggravated murder had been proven beyond a reasonable doubt. See *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184.

█ R.C. 2929.71 provides that an additional term of actual incarceration of three years shall be imposed where an offender is convicted of a specification charging him with having a firearm on or about his person or under his control while committing a felony. Jackson argues that there is no evidence that he had a firearm "on or about his person."

R.C. 2923.03(A) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [c]onspire with another to commit the offense." Whoever violates R.C. 2923.03(A) is guilty of complicity in the commission of the offense and will be prosecuted and punished as if he were the principal offender. R.C. 2923.03(F).

Jackson conspired with Barron to kill Foster with a gun. Jackson is, therefore, guilty of complicity in the murder of Foster with a gun. Thus, he was properly convicted of the firearm specification as if he had killed Foster with the gun himself.

Daniels's sixth and seventh assignments of error and Jackson's third and eleventh assignments of error are without merit.

## VII

In his second assignment of error, Jackson contends that the trial judge erred in failing to disqualify himself from conducting this murder trial because he presided over Jackson's prior trial for the kidnapping, assault and burning of Foster. Jackson did not move for recusal or disqualification, nor did he file an affidavit with the Clerk of the Supreme Court to seek the disqualification of the trial judge in accordance with R.C. 2701.03.

Jackson does not identify any instances in the record demonstrating the trial judge's bias or prejudice due to the fact that he presided over the first trial. Instead, he argues that the trial judge could not have remained unbiased and unprejudiced after hearing testimony in the first trial.

Our review of the record reveals that the trial judge presided over Jackson's trial in a fair and impartial manner. We find nothing to indicate that the trial judge was biased against Jackson in any regard. Furthermore, the allegedly prejudicial evidence the trial judge heard in the first case involving the assault on Foster was reiterated in the second case involving the murder of Foster. We, therefore, find no merit in Jackson's second assignment of error.

## VIII

In his fifth assignment of error, Jackson maintains that he was prejudiced by certain remarks made by the prosecution in closing argument. Specifically, Jackson takes offense to the reference by the prosecution that he was Satan.

The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596. The prosecution, as well as the defense, is entitled to a certain degree of latitude in summation. *State v. Liberatore* (1982), 69 Ohio St.2d 583, 23 O.O.3d 489, 433 N.E.2d 561.

The prosecution's comments in closing were in response to defense counsel's argument that the state had made a deal with Satan in reference to its plea agreement with Barron. The prosecution argued in reply that Jackson was the actual Satan in this case. We find nothing improper in the prosecution's statement in closing argument based upon what was said in the defense's closing argument.

Furthermore, Jackson's failure to object at trial to the prosecutorial remarks waived any error. *State v. Lott, supra; State v. Johnson* (1989), 46 Ohio St.3d 96, 545 N.E.2d 636, certiorari denied (1990), 494 U.S. 1039, 110 S.Ct. 1504, 108

L.Ed.2d 639. There was no miscarriage of justice and no plain error. *State v. Lott, supra.*

Accordingly, we find no merit in Jackson's fifth assignment of error.

## IX

In his sixth and seventh assignments of error, Jackson contends that he was denied his right to confront witnesses against him. As stated previously, an accused's right to examine witnesses is guaranteed by the Confrontation Clause of the Sixth and Fourteenth Amendments to the United States Constitution and by Section 10, Article I of the Ohio Constitution. *State v. Williams, supra.*

Initially, Jackson argues that his right to confrontation was violated by the prosecutor "continually standing between the witness and the appellant." The record in this case indicates that during side-bar conferences between the attorneys and the trial court throughout Barron's testimony an assistant prosecutor stood between Barron and Jackson. This was done to preclude Jackson from making further threats against Barron while he was sitting on the witness stand. Once the trial court was apprised of the situation, it ordered the prosecutor to stop placing one of his assistants between Jackson and the witness. The trial court further requested that any further allegations of threats to witnesses be brought to its attention immediately.

Although Jackson's view of Barron was obstructed while side-bar conferences were conducted throughout Barron's testimony, Jackson's view of the witness was not hindered in any manner while Barron was actually testifying. Furthermore, Jackson was given an opportunity to cross-examine this witness, as were Daniels and Minor. We, therefore, hold that Jackson's right of confrontation was not violated with respect to the prosecutor's actions during the taking of Barron's testimony.

Jackson next contends that his right to confront witnesses was violated by the admission of extrajudicial statements made by Daniels and Minor which inculpated Jackson. Throughout Barron's testimony, he referred to statements made to him by Daniels and Minor which implicated Jackson in the conspiracy to kill Foster. Jackson argues that because Daniels and Minor did not take the stand, he was denied his right to cross-examine them with respect to their statements.

As stated previously, under Evid.R. 801(D)(2)(e), an out-of-court declaration of a co-conspirator is admissible and not hearsay when five elements are established. The existence of the conspiracy to kill Foster, Jackson's participation in the conspiracy, and Daniels's and Minor's participation in the conspiracy were established through independent evidence presented at trial, including the testi-

mony of Barron without the extrajudicial statements of Daniels and Minor. Furthermore, the statements made by Daniels and Minor to Barron while the conspiracy was being executed were statements made during the course of the conspiracy and in furtherance of the conspiracy. See *State v. Banks, supra; State v. Cacic, supra.* Accordingly, these statements were not hearsay and were properly admitted against Jackson.

Because these statements were not hearsay and were, therefore, properly admitted, Jackson's right to confront witnesses was not violated despite the fact that the declarants of these statements did not testify. See *State v. Cacic, supra.* See, also, *Bruton v. United States, supra; State v. Moritz, supra.* We, therefore, find no merit in Jackson's sixth and seventh assignments of error.

## X

In his tenth assignment of error, Jackson contends that the trial court improperly admitted evidence of his "other crimes." The trial court permitted the state to introduce evidence relative to the abduction, beating and burning of Foster, and to Jackson's alleged participation in those events.

Evid.R. 404(B) provides as follows:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The state's case centered on the theory that Jackson conspired to kill Foster to prevent him from testifying against Jackson with respect to the assault on Foster. Clearly, the evidence of Jackson's alleged participation in the assault on Foster was admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" with respect to the killing of Foster under Evid.R. 404(B). We, therefore, find no merit in Jackson's tenth assignment of error.

The judgments of the trial court are affirmed.

*Judgments affirmed.*

KLUSMEIER, P.J., DOAN and HILDEBRANDT, JJ., concur.