Defendant-appellant, William Herring, appeals a criminal conviction obtained in the Mahoning County Court of Common Pleas. Following a jury trial, appellant was found guilty of aggravated burglary and aggravated robbery, violations of R.C.2911.11(A)(3)(B) and R. C. 2911.01(A)(1)(B), respectively.
Frederick Glenn, Charles Herring, and Arthur Mendenhall were coworkers at a local car wash. On March 26, 1995, the three men finished a day's work and retired to Glenn's apartment. Charles Herring and Mendenhall subsequently left the apartment to go to a nearby gas station.
Around 7:30 p.m. that same evening, Charles Herring and Mendenhall returned to Glenn's apartment along with appellant (Charles' brother) and George Cunningham. Charles Herring, appellant, and Cunningham went to the door of Glenn's apartment while Mendenhall waited nearby his car. Noticing that Charles had returned with additional persons unknown, Glenn hesitated at first to open the door. At Charles Herring's insistence, Glenn finally opened the door. The three men (Charles Herring, appellant, and Cunningham) pushed their way into Glenn's apartment.
Cunningham entered first pointing a gun at Glenn. Glenn and Cunningham then began to struggle for the gun. Cunningham then struck Glenn and demanded money from him. Meanwhile, appellant grabbed Flossie Greer, Glenn's girlfriend, held a gun to her, and forced her into a back room. Charles Herring and appellant stayed with Glenn in the front living room.
In the back room, appellant demanded money from Greer and threatened to kill her if she did not comply. In response, Greer produced a twenty dollar bill which appellant grabbed from her hand.
Charles Herring and Cunningham then proceeded to the back room where appellant was holding Greer. Glenn seized this opportunity and fled the apartment through the front. Glenn ran to a church next door to seek help. Meanwhile, Charles Herring went to the door of the back room and told appellant "let's get out of here." (Tr. 566). The three then fled the apartment.
On April 21, 1995, appellant was jointly indicted with his brother, Charles Herring, and Cunningham. The joint indictment charged the three defendants with aggravated burglary and aggravated robbery, violations of R.C. 2911.11(A)(3)(B) and R.C. 2911.01(A)(1)(B), respectively. Both counts contained firearm specifications. The three defendants were arraigned on May 2, 1995 and Cunningham pled guilty to the charges.
On April 29, 1996, appellant and his brother were tried jointly. The trial court filed a judgment entry on May 2, 1996, finding that the brothers' cases were properly joined for trial. The jury found appellant guilty upon all counts and he was sentenced on May 7, 1996. This appeal followed.
Before addressing each of appellant's assigned errors, we note initially that appellant failed to raise any of them in the trial court below. It is a well recognized principle of law that an appellant's failure to raise an error in the trial court constitutes a waiver of that issue on appeal unless it rises to the level of plain error. State v. Underwood (1983),3 Ohio St.3d 12, 13. Crim.R. 52(B) instructs that we may take notice of plain errors or defects affecting the substantial rights of the accused.
"Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." State v. Wickline (1990), 50 Ohio St.3d 114, 120. Furthermore, "[n]otice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
Appellant did not raise his assigned errors in the trial court below and he concedes this omission. Therefore, we proceed to examine each of appellant's assigned errors for plain error.
In his first assignment of error, appellant alleges that the trial court erred in joining for trial his case along with that of the co-defendant, Charles Herring.
Crim.R. 8(B) governs the joinder of defendants in a criminal case. It reads:
 "Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count."
On April 21, 1995, appellant and co-defendant Charles Herring were charged in the same indictment. The indictment alleged that both appellant and co-defendant Charles Herring participated in the same act or transaction resulting in the commission of aggravated burglary and aggravated robbery.
R.C. 2945.13 reads:
 "When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court, for good cause shown on application therefor by the prosecuting attorney or one or more of said defendants, orders one or more of said defendants to be tried separately."
As the aforementioned provisions indicate, the law favors the joinder of defendants and the avoidance of multiple trials.State v. Thomas (1980), 61 Ohio St.2d 223, 225. "Joinder conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." Id.
However, joinder is not without its limitations. Crim.R. 14 provides in relevant part:
 "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."
An appellate court will not disturb a trial court's decision regarding joinder or severance absent a clear showing of abuse of discretion. State v. Torres (1981), 66 Ohio St.2d 340, syllabus. A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. State v.Montgomery (1991), 61 Ohio St.3d 410. Furthermore, a defendant claiming error in the trial court's denial of separate trials has the burden of affirmatively showing that his rights were prejudiced. Torres, supra.
Appellant advances two general claims of prejudice. First, appellant argues that he was prejudiced by the presentation of antagonistic defenses.
"Defenses are antagonistic where each defendant is trying to exculpate himself and inculpate his co-defendant. * * * Antagonistic defenses can prejudice co-defendants to such a degree that they are denied a fair trial." (Internal citations omitted.) State v. Daniels (1993), 92 Ohio App.3d 473, 486.
Zafiro v. United States (1993), 506 U.S. 534, relied on byDaniels, supra, is instructional on the issue of antagonistic defenses. In Zafiro, the United States Supreme Court interpreted Fed. Crim.R. 8(b) and 14 which are analogous to Ohio Crim.R. 8(b) and 14. The court rejected a bright-line rule which would mandate severance whenever codefendants have conflicting defenses. Zafiro, supra, at 538. Furthermore, the court held that "[m]utually antagonistic defenses are not prejudicial per se." Id. Elaborating on this ruling, the court stated:
 "We believe that, when defendants properly have been joined under Rule 8(b), a [trial] court should grant a severance under Rule 14 only if there is a serious risk that a joint trial could compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539
Appellant asserts that his defense was exculpatory of himself and inculpatory of Charles. Appellant states that he acted out of only benign motives. He testified that he did not rob Greer, Glenn's girlfriend. He testified that he followed her into the back room merely to explain to her why they were there. Appellant's testimony was inculpatory of Charles to the extent that he stated that Charles was high on crack at the time.
Conversely, appellant asserts that Charles' defense was exculpatory of himself and inculpatory of appellant. Charles testified that he tried to prevent the robbery by asking appellant and Cunningham to quit what they were doing. Charles further testified that, before appellant went after Greer into the back room, appellant responded to Charles' pleas to quit by threatening to shoot him with his gun. Charles also testified that appellant was high on crack.
It is clear from the record that these defendants presented antagonistic defenses to the extent that Charles Herring's testimony was very inculpatory of appellant. However, appellant's testimony was not inculpatory of Charles as to the crimes charged.
Although there was some degree of antagonism between the defenses presented by the co-defendants, this does not inevitably lead to the conclusion that any of appellant's specific trial rights were compromised or that the jury was prevented from making a reliable judgment about his guilt or non-guilt thus resulting in the denial of a fair trial. Appellant has failed to assert or demonstrate that he was denied a specific trial right. The testimony appellant complains of was that elicited from his brother and co-defendant, Charles Herring. Appellant was afforded the opportunity and did, in fact, cross-examine Charles. Had the co-defendants been tried separately, the state still could have called Charles as a witness and elicited the same testimony. Furthermore, the trial court gave the proper instructions relating to multiple defendants, instructed the jury that they had to decide separately the question of guilt or non-guilt of each defendant, and provided the jury with separate verdict forms for each defendant and each charge thereby curing any risk of prejudice.
Appellant's second claim of prejudice relates to when counsel for Charles Herring mentioned that Charles had given a statement prior to the trial which would corroborate Charles' in court testimony. Appellant argues that the jury might have used this pre-trial statement alone to determine that Charles' testimony was more credible than appellant's. However, as we already indicated, had the co-defendants been tried separately, the state still could have called Charles as a witness and elicited the same testimony.
Appellant has failed to affirmatively demonstrate that his rights were prejudiced or that the trial court abused its discretion in trying these co-defendants together. Likewise, appellant has failed to demonstrate that joinder of the these co-defendants resulted in plain error.
Accordingly, appellant's first assignment of error is without merit.
In his second assignment of error, appellant alleges that the trial court failed to adequately protect him from adverse pre-trial publicity. During appellant's trial, a double murder occurred in a local bar which attracted news media coverage. One of those accused of the murders was a person named Willie Herring.
During the trial, one of the jurors who saw some of the news coverage inquired of a bailiff if appellant and Willie Herring were one in the same. The trial court judge summoned the juror to chambers and informed her that appellant and Willie Herring were not one in the same. The juror indicated that the revelation would not affect her ability to serve as a juror.
The judge then proceeded to make a general inquiry of and statement to the jury as a whole. He stated:
 "[O]ne of the persons that they have charged is a fellow by the name of Willie Herring. Now, that's a very similar name to William Herring who is on trial in this case. But you are informed that that is not the same person and that if you hear that type of information — if it is disclosed in the media at all, you are to know that has nothing to do with this case and it is not the same person." (Tr. 452)
There is no case law in Ohio clearly addressing the issue of publicity or media coverage that arises during the trial of a case which is unrelated to the trial itself yet has the potential to affect a defendant's right to a fair trial. Appellant seeks to draw principles from and analogize this situation to the one involving adverse pre-trial publicity. In those cases, appellate courts are able to review the voir dire
to determine whether pre-trial publicity prevented the defendant from obtaining a fair and impartial jury. See Statev. Lundgren (1995), 73 Ohio St.3d 474. In this case, however, the alleged adverse publicity arose during the course of the trial. Therefore, reviewing the voir dire is not helpful. However, a basic principle which can be drawn from the adverse pre-trial publicity cases is that they each looked to see whether the defendant was prevented from obtaining a fair and impartial jury.
A review of the record in this case reveals no evidence that appellant was prevented from having his case heard by a fair and impartial jury. The trial court judge inquired of the jury panel regarding the media coverage on the unrelated case and repeatedly advised them that Willie Herring and appellant were not the same person. (Tr. 451-453). The judge's admonitions were more than adequate to remove any risk of unfairness, impartiality, or prejudice, the media coverage may have presented. Therefore, appellant was not denied a fair and impartial jury.
Accordingly, appellant's second assignment of error is without merit.
In his third assignment of error, appellant alleges that the trial court erred in prohibiting defense counsel to inquire of a key state witness whether he had made a deal with the prosecution concerning a pending indictment.
At the time of appellant's trial, Frederick Glenn, the victim and the state's key witness, was under indictment for robbery. The trial court judge addressed this issue prior to opening statements. The colloquy went as follows:
 "THE COURT: On the issue of the victim having a charge pending against him, this Frederick Glenn. My understanding is that he has just been indicted for a felony and that it would be the intention of the defense to question him about whether or not he has made any deals with the State of Ohio in return for his testimony; right?
"MR. FRANKEN: Right.
"MR. LAVELLE: That's the nature of that.
 "THE COURT: I had told you before, and I don't know if it was a matter of record, that there is to be no mention of any of that in opening statement and that before we would get to anything of that nature in evidence we'll have to conduct a further hearing on the subject.
"MR. FRANKEN: Yes, Your Honor.
 "THE COURT: I don't want anybody blurting that out to the jury. I thought I would say that. I don't remember if I did do that on the record before. (Tr. 411-412)
The Ohio Supreme Court addressed the issue raised by appellant's third assignment of error in State v. Hector
(1969), 19 Ohio St.2d 167. Hector involved a situation where defense counsel attempted to ask a witness for the prosecution about indictments pending against him. The trial court sustained an objection to the question. The Supreme Court reversed the conviction and articulated its reasoning as follows:
 "While ordinarily the credibility of a witness may be attacked by proof of conviction of crime, but not by proof of indictment, this rule is subject to the exception that a witness in a criminal case may be asked if he is under indictment for crime, if such fact would reasonably tend to show that his testimony might be influenced by interest, bias, or a motive to testify falsely. * * *
"* * *
 "[E]vidence that criminal charges are then pending in the same court against a witness for the prosecution is a circumstance tending to show that the testimony of the witness is or may be influenced by the expectation or hope that, by aiding in the conviction of the defendant, he might be granted immunity or rewarded by leniency in the disposition of his case. Alford v. United States (1931), 282 U.S. 687, * * *." (Internal citation omitted.) Id. at 178
The court went to hold:
 "[T]he trial court erred in refusing to permit defense counsel to cross-examine (the state's witness] as to any pending indictments against him. In view of the nature of [the state's witness'] testimony, and in view of the nature of this case, we hold that such limitation of cross-examination was prejudicial to the rights of the defendant." Id. at 179
In the instant case the witness, Frederick Glenn, was under indictment in an unrelated matter. The charge was robbery, the same charge appellant was facing. The aforementioned colloquy between the trial court and defense counsel indicates that the court was not foreclosing the possibility of inquiry regarding the pending indictment. (Tr. 411-412). The trial court was merely postponing the matter until it came up in trial and held a further hearing. (Tr. 411-412). However, defense counsel never made any further motion, objection, or attempt to question the witness regarding the pending indictment. This situation contrasts that in Hector where defense counsel attempted to question the witness at trial, the state objected, and the trial court sustained the objection. Therefore, appellant has failed to demonstrate any error, let alone plain error.
Accordingly, appellant's third assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs
Waite, J., concurs
APPROVED:
 --------------------------- Gene Donofrio Presiding Judge
Hon. Gene Donofrio, Hon. Joseph J. Vukovich, Hon. Cheryl L. Waite, JUDGES.