OPINION AND JUDGMENT ENTRY
This matter is before the court on appeal from the Lucas County Court of Common Pleas.
In the early morning hours of August 30, 1997, Carlos Garcia was shot to death in front of 217 Wasaon Street, Toledo Ohio. Minutes earlier, Garcia had been seen with appellant, Michael Vallejo. One witness identified appellant as the man who shot Garcia. On September 16, 1997, appellant was indicted for the murder of Garcia. The indictment included a gun specification. On January 16, 1998, a jury found appellant guilty. He was sentenced to an indefinite prison term of eighteen years to life. Appellant now appeals setting forth the following assignments of error:
 "I. BETWEEN THE CERTIFICATION OF WITNESSES AND THE RULINGS THAT POLICE OFFICER'S WRITTEN REPORTS OF WHAT WITNESSES TOLD THEM, APPELLANT WAS DENIED THE EFFECTIVE RIGHT OF CONFRONTATION. HIS RIGHTS TO DISCOVERY WERE COMPROMISED, AND THE TRIAL WAS RENDERED EFFECTIVELY UNFAIR.
 "II. WHEN THE STATE OF OHIO IS PERMITTED TO CERTIFY CIVILIAN WITNESSES BUT APPELLANT IS OBLIGED TO PROVIDE A NOTICE OF ALIBI, APPELLANT'S RIGHT TO FAIR TRIAL AND DUE PROCESS ARE VIOLATED.
 "III. THE TRIAL COURT ERRED AND APPELLANT WAS DENIED THE RIGHT TO CONDUCT AN EFFECTIVE CROSS EXAMINATION WHEN THE TRIAL COURT REFUSED TO PERMIT HIM TO ASK WITNESS MICHAEL GUERIN ABOUT HIS BEING A POLICE INFORMANT.
 "IV. THE TRIAL COURT ERRED IN REFUSING APPELLANT'S REQUEST TO CHARGE THE JURY ON THE INFERIOR DEGREE OFFENSE OF VOLUNTARY MANSLAUGHTER.
 "V. PROSECUTORIAL MISCONDUCT DURING THE STATE'S REBUTTAL CLOSING ARGUMENT DENIED APPELLANT A FAIR TRIAL AND ANY FAILURE ADEQUATELY TO PRESERVE THE ISSUE CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL."
Appellant's first and second assignments of error will be addressed together. Appellant contends that because of the court's rulings regarding the certification of two state witnesses and the admission of witness statements, he was denied his right to confrontation, his right to discovery and his right to a fair trial. Appellant further contends that the certification of the two state witnesses was particularly egregious in that appellant was nonetheless required to file a timely notice of alibi and a witness list.
On October 20, 1997, the state filed a motion to certify two of its witnesses pursuant to Crim.R. 16(B)(1)(e). Specifically, the state asked that the names and addresses of two witnesses be withheld from the defense until the witnesses testified at trial. A hearing on the motion was held in chambers outside the presence of the defense. The prosecutor testified that both witnesses, fifteen year-old girls, lived in the vicinity of appellant's family. One of the witnesses was attending school with appellant's sister. Both witnesses were acquainted with various family members and friends of appellant. One of the witnesses was told by appellant that anyone testifying for the state will meet with physical harm. A Toledo Police Detective testified that the families of both witnesses were in fear for their safety because of appellant's gang affiliation. Following this testimony, the court granted the state's motion.
The right to confront witnesses is guaranteed to an accused through the Sixth and Fourteenth Amendments to the United States Constitution and by Section 10, Article I of the Ohio Constitution. State v. Daniels (1993), 92 Ohio App.3d 473, 480, citing State v. Williams (1986), 23 Ohio St.3d 16. This right is limited, however, by Crim.R. 16(B)(1)(e), which permits a trial court to issue an order allowing the state to withhold the name and address of a witness if the state certifies that disclosure may subject the witness to physical harm or coercion. Daniels,supra, citing State v. Parson (1983), 6 Ohio St.3d 442. Certification by the state under Crim.R. 16 is not satisfied by the prosecutor's merely stating his conclusion that a witness might be subject to harm; it requires the state's reasons for requesting witness protection to appear on the record. Daniels,supra, citing State v. Williams, supra, andState v. Owens (1975), 51 Ohio App.2d 132. The state must show the existence of an undue risk of harm in order to be relieved of its obligation to disclose the names of its witnesses. State v. Gillard (1988),40 Ohio St.3d 226.
Based on a review of the transcript of the ex parte
hearing, we conclude that the state demonstrated the existence of an undue risk of harm to potential witnesses if their identities were revealed. We further note that the witnesses' identities were not absolutely withheld since they were present at trial and subject to cross-examination. Appellant's comparison of certification to his duty to provide a notice of alibi and a witness list ignores the narrow and specific purpose of Crim.R. 16(B)(1)(e).
Appellant also contends that the court erred in preventing him from usefully cross-examining state witnesses James Kimbrell and Michael Guerin. Crim.R. 16(B)(1)(g) states:
 "Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 "If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 "If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
 "Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."
Both Kimbrell and Guerin testified that on the night of the shooting, they were interviewed by Toledo Police Detective Bernard Moss. Due to a family emergency, Detective Moss was not present at trial. When appellant's attorney attempted to cross-examine Kimbrell and Guerin about their interviews with Detective Moss, the prosecutor objected and the trial court sustained the objection. Appellant contends that the trial court should have allowed appellant to cross-examine the witnesses regarding their interviews with Detective Moss based on the fact that the interviews were "witness statements" pursuant to Crim.R. 16(B)(1)(g). This argument is without merit as no written or recorded statements were admitted into evidence.
Appellant acknowledges that in isolation, the above alleged errors may not have resulted in an acquittal for appellant. Rather, appellant contends that the cumulative effect of these errors prevented him from having a fair trial. Having already determined no errors were committed, we further conclude that the cumulative effect of the court's rulings did not deprive appellant of a fair trial. Appellant's first and second assignments of error are, therefore, not well-taken.
In his third assignment of error, appellant contends the court erred in not allowing him to cross-examine Michael Guerin regarding his status as a paid police informant. Appellant contends that because Guerin has worked as a paid police informant in other cases, he was a biased witness against appellant. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173.
It is undisputed that Guerin was not working as a paid police informant on the night Carlos Garcia was shot. Thus, his status as a paid police informant in other cases is irrelevant. Appellant contends that Guerin's credibility as a witness was crucial because he testified that he saw appellant at the crime scene with Garcia minutes before Garcia was shot. However, even if appellant had been allowed to impeach Guerin's credibility, the outcome of the trial would not have been different given the fact that Stephanie Matney testified she saw appellant shoot Carlos Garcia. Appellant's third assignment of error is found not-well taken.
In his fourth assignment of error, appellant contends the trial court erred in not instructing the jury on the elements of voluntary manslaughter. A criminal defendant has the right to expect that the trial court will give complete jury instructions on all issues raised by the evidence. State v. Williford (1990),49 Ohio St.3d 247. Jury instructions should be tailored to fit the facts of each case. Avon Lake v. Anderson (1983), 10 Ohio App.3d 297. The elements of voluntary manslaughter are as follows:
 "[N]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy." R.C. 2903.03.
The Supreme Court of Ohio explained what constitutes "reasonably sufficient" provocation in the context of voluntary manslaughter in State v. Shane (1992), 63 Ohio St.3d 630.
First, an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. That is, the provocation must be "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case "actually was under the influence of sudden passion or in a sudden fit of rage." Statev. Mack (1998), 82 Ohio St.3d 198, 201, citing Shane,63 Ohio St. 3d at 634-635. "Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." Id.
While more than one witness observed appellant in the area of the crime scene, only one witness testified that she saw appellant shoot Carlos Garcia. Stephanie Matney testified that she was riding on the handlebars of Joey Jaso's bike when she saw Carlos Garcia on top of appellant. Garcia was choking appellant. When Jaso slammed on the brakes of the bike, Matney was thrown forward. This commotion scared Garcia off of appellant. Matney testified she was under a streetlight approximately five feet away from the two men. She testified that appellant stood up, looked over at her and her friends, announced to Garcia he was going to shoot him and then shot him twice in the chest. At this point, Matney testified she ran away in fear. The next day, Matney testified that she spoke to appellant. Appellant told her he shot Garcia because Garcia was trying to kill him.
Based on the evidence before us, we do not find that the appellant's actions were brought on by a "sudden passion or a fit of rage." Key to our conclusion is Matney's testimony that appellant looked at her and her friends, calmly announced his intentions and then shot Garcia. Appellant's fourth assignment of error is found not well-taken.
In his fifth assignment of error, appellant alleges prosecutorial misconduct. Specifically, appellant contends that three statements made by the prosecutor in his closing argument prejudicially affected appellant's right to a fair trial.
The test for prosecutorial misconduct during closing argument is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1990), 51 Ohio St.3d 160. Error exists if it is clear beyond a reasonable doubt that the jury would not have found the accused guilty absent the prosecutor's comments. State v. Smith (1984), 14 Ohio St.3d 13, 15. Generally, prosecutors are entitled to a significant degree of latitude during closing arguments. State v. Brown (1988), 38 Ohio St.3d 305.
In the first statement highlighted by appellant, the prosecutor suggested that the evidence disproved appellant's alibi defense.
 "And you talk about independent evidence that really has no bias or prejudice. Those time cards do, and they establish conclusively that the call came in for the cab at 230 Field for ride to Econo Lodge after 3:00 a.m., no bones about it. That's a fact. That's proven."
Appellant did not object to the above statement. We conclude that the outcome of the trial would not have been different had the prosecutor refrained from making the above statement.
Next, appellant contends that the prosecutor committed misconduct when he told the jury that "Stephanie Matney came in here and told you the truth." The prosecutor then went on to say: "She is a credible witness. She has no reason or motive or position to tell you anything but the truth. She benefits nothing by coming in here and telling you this. She may even put her life at risk."
It is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. State v. Williams (1997),79 Ohio St.3d 1, 12. In this instance, however, appellant objected and the court instructed the jury to disregard the prosecutor's comments. Juries are presumed to follow and obey the instructions given to them by the trial court. See Parker v. Randolph (1979),442 U.S. 62, 74-74. While the prosecutor's comments on witness credibility may have been improper, appellant has not shown that the outcome of his trial would have been different. Viewing all of the prosecutor's statements in the context of the record as a whole, we conclude that appellant was not denied his right to a fair trial. Accordingly, appellant's fifth assignment of error is found not well-taken.
On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J.
 James R. Sherck, J.
 Mark L. Pietrykowski, J.
CONCUR.