OPINION
Appellant Daniel Graham is appealing his conviction, in the Licking County Court of Common Pleas, of aggravated murder. The following facts give rise to this appeal.
Appellant and his co-defendant, Paul Duncan, burglarized the Merkle family residence on September 20, 1979. The victim in this case, Roberta Peters, was a native of Arizona and a recent college graduate. At the time of her murder, Ms. Peters was dating John Merkle and was residing at the Merkle residence while attempting to secure employment in the Granville area. On the day of the burglary, Ms. Peters was the only person home at the Merkle residence.
During the course of the burglary, appellant and Paul Duncan decided to kill Ms. Peters, the only witness to their burglary. While in the Merkle residence, the men placed an apron over the victim's head and shot her. Appellant and Paul Duncan disposed of Ms. Peters' body in the backyard of the Merkle residence. Upon returning home from Columbus, John Merkle discovered the residence had been burglarized and found Ms. Peters' body in the backyard.
Although appellant and Paul Duncan were considered suspects as early as September, 1979, they were not indicted by the Licking County Grand Jury until November 27, 1996. The grand jury indicted appellant and Paul Duncan, each, on one count of aggravated murder. On February 18, 1997, appellant filed a motion to dismiss the indictment based upon the denial of his state and federal constitutional right to a speedy trial, right to due process and right to be free from double jeopardy. On April 21, 1997, appellant filed a motion asking the trial court to sever his trial from the trial of Paul Duncan. The trial court conducted hearings on the motions and subsequently overruled appellant's motions.
The jury trial of this matter commenced on September 27, 1997. Following deliberations, the jury found appellant guilty as charged in the indictment. The trial court sentenced appellant accordingly. Appellant timely filed a notice of appeal. The state filed a cross-appeal. The parties set forth the following assignments of error for our consideration:
 I. THE TRIAL COURT ERRED BY OVERRULING THE DEFENDANT'S MOTION FOR SEVERANCE OF TRIALS BECAUSE STATEMENTS ADMITTED AT TRIAL WERE INADMISSIBLE HEARSAY AND VIOLATED MR. GRAHAM'S RIGHT TO CONFRONT WITNESSES AGAINST HIM.
 II. THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION FOR DISMISSAL BASED ON PRE-INDICTMENT DELAY, THEREBY DENYING THE DEFENDANT THE DUE PROCESS OF LAW GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE I, SECTION 16 OF THE CONSTITUTION OF THE STATE OF OHIO.
 III. THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW WAS VIOLATED BY THE PROSECUTOR'S IMPROPER COMMENTS DURING CLOSING ARGUMENT.
 IV. THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW WAS VIOLATED BECAUSE THE CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE.
 Cross-Appeal I. THE TRIAL COURT IMPROPERLY REDACTED A STATEMENT ATTRIBUTED TO APPELLANT DUNCAN BY ORDERING THE DELETION OF THE REFERENCE IN IT TO A STATEMENT MADE BY APPELLANT GRAHAM WHICH WAS STRONGLY PROBATIVE OF APPELLANT GRAHAM'S INTENT TO KILL.
 II. THE TRIAL COURT COMMITTED ERROR IN EXCLUDING EVIDENCE THAT APPELLANT DUNCAN MAINTAINED TOMBSTONES IN THE NEAR VICINITY OF THE DISPOSAL OF THE STOLEN PROPERTY.
 I
In his first assignment of error, appellant maintains the trial court erred when it denied his motion to sever thereby forcing him to go to trial with his co-defendant Paul Duncan. Appellant contends the denial of his motion to sever violated his right of confrontation and to a fair trial as guaranteed by theSixth and Fourteenth Amendments to the United States Constitution, Section 10, Article I of the Ohio Constitution and the provisions of Crim.R. 14. We disagree.
Crim.R. 14 addresses relief from prejudicial joinder and provides, in pertinent part:
 If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial. * * *
"Joinder of defendants and the avoidance of multiple trials is favored in the law because joinder `conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries.' " State v. Daniels (1993),92 Ohio App.3d 473, 484, citing State v. Thomas (1980), 61 Ohio St.2d 223,225; State v. Bordeau (Apr. 7, 1988), Franklin App. No. 87AP-688, unreported. We will not disturb a trial court's decision regarding severance absence a showing of abuse of discretion. Daniels at 484, citing State v. Torres (1981),66 Ohio St.2d 340, 343. An abuse of discretion connotes more than an error of law or judgment, it implies the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
Appellant contends the trial court erred when it denied his motion to sever because he was denied his right to confront witnesses as a result of the statements made by his co-defendant's nephew, Larry Ingram. Ingram testified to the following, at trial, concerning statements Duncan made to him regarding the Merkle burglary:
 1. Duncan informed Ingram that he had to kill the twenty-three year old girl in Licking County because she saw his face. Tr. Vol. IV at 113.
 2. Duncan informed Ingram that he shot the girl behind the ear. Tr. Vol. IV at 115.
 3. Duncan informed Ingram that Graham was with him and that he told Graham to run after the girl when she ran out of the house. Tr. Vol. IV at 114-115.
 4. Duncan informed Ingram that he and Graham took a lot silver and threw it in the river along with the gun. Tr. Vol. IV at 115-116.
Ingram testified that co-defendant Duncan made the above statements to him, in February of 1983, while they were riding in Ingram's car. Tr. Vol. IV at 112.
In support of this assignment of error, appellant cites to the cases of Bruton v. U.S. (1968), 391 U.S. 123 and State v.Moritz (1980), 63 Ohio St.2d 150. In Bruton, "* * * the United States Supreme Court held that, in a joint trial, the admission of a co-defendant's confession that implicated the defendant, where the co-defendant did not take the stand, denied the defendant his constitutional right of confrontation and constituted prejudicial error." Daniels at 485. In reliance upon Bruton, the Ohio Supreme Court held in Moritz that " `[a]n accused's right of cross-examination secured by the confrontation clause of theSixth Amendment is violated in a joint trial with a non-testifying co-defendant by the admission of extrajudicial statements made by the co-defendant inculpating the accused.' " Id., citing Moritz at paragraph one of the syllabus.
The Ohio Supreme Court discussed the purpose of the Confrontation Clause and hearsay evidence. The Court explained as follows:
 The Confrontation Clause is a constitutional safeguard that ensures a defendant will not be convicted based on the charges of unseen, unknown, and unchallengeable witnesses. [Citations omitted.] Thus, the Confrontation Clause bars the admission of some evidence that would otherwise be admissible under a hearsay exception. [Citations omitted.] When a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause requires a showing that he is unavailable and that the statement bears adequate `indicia of reliability.' Ohio v. Roberts (1980), 448 U.S. 56, 66, * * *. The reliability standard can be satisfied without more in a case where the evidence falls within a firmly rooted hearsay exception. Id. at 66, * * *. Otherwise, to satisfy the Confrontation Clause the evidence must be supported by a showing of `particularized guarantee of trustworthiness.' Id. State v. Gilliam (1994), 70 Ohio St.3d 17, 19-20.
In the case sub judice, we find, as did the trial court, co-defendant Duncan's statements to Larry Ingram fall within an established exception as a statement against interest under Evid.R. 804(B)(3). This rule provides:
 (3) Statement against interest. A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
Appellant's co-defendant did not testify at trial and therefore, was unavailable for purposes of the unavailability requirement of Evid.R. 804(B)(3). We must next determine whether Duncan's statements to Larry Ingram were statements against interest. "To qualify as a statement against interest, it must be shown that the statement `tended to subject' the declarant to criminal liability so that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true.' " Id. at 20, citing United States v.Garcia (C.A.7, 1990), 897 F.2d 1413, 1420.
Clearly, the statements made by Duncan, to Larry Ingram, tended to subject Duncan to criminal liability. Duncan admitted to Ingram that he killed Ms. Peters by shooting her behind the ear. Duncan stated he had to kill Ms. Peters because she saw his face. Duncan further admitted that co-defendant Graham was with him and that he instructed Graham to run after Ms. Peters when she ran out of the house. Finally, Duncan informed Ingram that he and Graham stole a lot of silver from the Merkle residence but threw it in the river along with the gun. These statements subject Duncan to criminal liability and therefore, qualify as a "statement against interest" under Evid.R. 804(B)(3).
Finally, we must determine, under Evid.R. 804(B)(3), whether corroborating circumstances clearly indicate the trustworthiness of the statements before the statements against interest become admissible. The determination of corroborating circumstances rests within the sound discretion of the trial court. State v.Landrum (1990), 53 Ohio St.3d 107, 114. In the case of U.S. v.Sasso (C.A.2, 1995), 59 F.3d 341, 349, the court explained that "[a] statement incriminating both the declarant and the defendant may possess adequate reliability if (a) the statement was made to a person whom the declarant believes is an ally, not a law enforcement official, and (b) the circumstances surrounding the portion of the statement that inculpates the defendant provides no reason to suspect that that portion is any less reliable than the part that directly incriminates the declarant." In United Statesv. Matthews (C.A.2, 1994), 20 F.3d 538, 546, the court determined that trustworthiness was adequately indicated by the fact that statements were volunteered by the declarant to his girlfriend, in the private recesses of their home, with no coercive pressures from or attempt to curry favor with authorities, and no attempt to shift blame or minimize the declarant's own culpability. Similarly, in the case sub judice, co-defendant Duncan made these statements, incriminating himself and appellant, to his nephew. In making these statements to Larry Ingram, Duncan made no attempt to shift blame or minimize his own culpability. In fact, it appears from these statements, Duncan was the person who killed Ms. Peters. We further find the statements made by Duncan, to Larry Ingram, regarding appellant's participation in the burglary, are not any less reliable than the statements Duncan made incriminating himself in the Merkle burglary. The trial court did not abuse its discretion in determining that Duncan's statements were trustworthy.
The statements Larry Ingram made, at trial, concerning appellant's involvement in the burglary met the requirements of a statement against interest under Evid.R. 804(B)(3) and therefore, did not violate the Confrontation Clause as the evidence was admissible under an exception to the hearsay rule.
Appellant also challenges the trial court's method of determining the admissibility of Larry Ingram's testimony. Appellant contends the trial court was required to break the statements down and determine the separate admissibility of each single declaration or remark. See Williamson v. U.S. (1994),512 U.S. 594, 599. Appellant also maintains that because the statements concerning appellant were collateral and not self-inculpatory, they were not statements against interest and should not have been admitted into evidence against him.
In relying on the Williamson case, appellant ignores the United States Supreme Court's statement that "[e]ven the confessions of arrested accomplices may be admissible if they are truly self-inculpatory, rather than merely attempts to shift blame or curry favor." Id. at 603. The Court's decision in Williamson
did not completely prohibit the introduction of such testimony. As noted above, in Sasso, the court determined that the admission of a statement made by one defendant, against a co-defendant, even though it inculpated the co-defendant, was not prohibited byWilliamson where certain criteria were met.
Therefore, the trial court did not abuse its discretion when it permitted the state to introduce statements made by Duncan, to Larry Ingram, regarding appellant's involvement, in the burglary at the Merkle residence, since these statements meet the criteria set forth in Sasso. Even though these statements inculpate appellant, as well as Duncan, the statements still qualify as statements against interest under Evid.R. 804(B)(3).
Finally, appellant contends the unfair prejudice resulting from co-defendant Duncan's statements substantially outweigh any probative value they possess under Evid.R. 403. Evid.R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Appellant argues the admission of Larry Ingram's testimony unfairly prejudiced him. As noted above, we found these statements to be trustworthy. Co-defendant Duncan made these statements to his nephew, Larry Ingram. Further, Duncan's statements not only inculpate appellant in the burglary of the Merkle residence and murder of Ms. Peters but they also inculpate Duncan. We find the probative value of these statements are not outweighed by their prejudicial effect.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant maintains the trial court erred when it denied his motion to dismiss based upon pre-indictment delay. Appellant claims the delay in bringing him to trial denied him his right to due process as guaranteed by theFifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution. We disagree.
In reviewing this assignment of error, as an appellate court, we must give great deference to the factual findings of a trial court. However, we must independently determine, as a matter of law, whether the trial court erred in applying the substantive law to the facts of the case. State v. Williams (1994), 94 Ohio App.3d 538,543, citing State v. Klein (1981), 73 Ohio App.3d 486,488. It is based upon this standard that we review appellant's first assignment of error.
Appellant argues the seventeen-year delay between the offense and indictment caused substantial prejudice and thereby violated his right to due process. Pre-indictment delay resulting in actual prejudice to a defendant "makes a due process claim concrete and ripe for adjudication." U.S. v. Lovasco (1977),431 U.S. 783, 789. "* * * [H]owever, proof of actual prejudice, alone, will not automatically validate a due process claim, and the prejudice suffered by the defendant must be viewed in light of the state's reason for the delay." Luck at 154, citing Lovasco at 789-790.
In Lovasco, the United States Supreme Court set forth a two-part test to determine whether a defendant has been denied due process as the result of pre-indictment delay. The defendant must first prove actual prejudice to his defense at trial. Second, a defendant must prove there was no justifiable reason for delay in prosecution. Lovasco at 790. Should a defendant not be able to establish actual prejudice, a court need not consider the reasons for the delay. State v. Dawson (Nov. 18, 1993), Cuyahoga App. No. 63122, unreported, citing Luck at 158.
Appellant makes the following claims in support of his argument that he was prejudiced by the seventeen-year delay. First, it was impossible for the defense to conduct any meaningful investigation regarding evidence of a crime that occurred seventeen years before the trial. In support of this argument, appellant refers to shell casings found at the scene of the crime which were returned to the Merkle family, footprint evidence which the Licking County Sheriff's Department no longer had at the time of trial and other possible witnesses that could not be located at the time of trial. Appellant merely cites to this evidence, but fails to explain, in his brief, how the lack of this evidence prejudiced his defense.
Appellant also alleges faded memories and the death of various witnesses hampered his defense. Since the state had the burden of proving appellant's guilt beyond a reasonable doubt, faded memories would be more of a disadvantage to the state as opposed to appellant. Further, we agree with the trial court's conclusion that appellant's assertion of faded memories, standing alone, does not amount to prejudice. See, e.g., U.S. v. DeCline
(C.A.6, 1990), 899 F.2d 1465; U.S. v. Guerrero (C.A.9, 1984),756 F.2d 1342.
In support of this argument, appellant also cites to the death of Dr. Paul N. Jolly. Appellant and the Sixth Circuit Court of Appeals, in its decision rendered in U.S. v. Graham (C.A.6, 1997), 128 F.3d 372, referred to Dr. Jolly as the coroner. The record in this matter indicates Dr. Jolly was not the coroner at the time of Ms. Peters' death. Dr. Robert Raker, the person who testified at appellant's trial, was the coroner. The Sixth Circuit Court of Appeals found prejudice as a result of Dr. Jolly's death because his testimony had to be presented by Dr. Raker, who did not examine Ms. Peters' body. Id. at 375.
We find the record in this matter indicates otherwise. Dr. Raker testified, at trial, that he was at the scene of the murder and did examine Ms. Peters' body prior to its removal from the crime scene. Tr. Vol. VI at 198, 201-202. Further, the Sixth Circuit Court of Appeals' decision addressed the unavailability of Dr. Jolly under the standard set forth in Barker v. Wingo (1972),407 U.S. 514, for post-indictment delay, as opposed to the standard used in analyzing a claim of pre-indictment delay. Appellant also stipulated that the autopsy report was "true, accurate, and authentic." Tr. Vol. VI at 193-194.
We will address appellant's third and fourth arguments simultaneously. Appellant maintains in his third argument that he was denied any potential alibi. Again, appellant does not cite to any witnesses that could have possibly provided him an alibi for the day in question.
In his fourth argument, appellant contends his employer at the time of the offense, Porter Drywall, was not able to produce the records to prove what time appellant worked on the day in question. As to this issue, the state argues, and we agree, the work records sought by appellant were not pertinent to his defense as he did not seek to procure them in 1987 when he was indicted in federal court. Donald Horne, appellant's employer, testified that appellant's co-defendant, Paul Duncan, was responsible for preparing the records he sought to subpoena. Motion Hrng., May 12, 1997, at 55-57. We agree with the state that since appellant's co-defendant prepared these records, their value is questionable as Duncan would have had a motive to alter these records to cover for the burglary and murder.
We find the above arguments, contained in appellant's second assignment of error, do not establish actual prejudice. Since appellant has failed to demonstrate actual prejudice from the pre-indictment delay, we need not proceed to the issue of the reason for the delay.
Appellant's second assignment of error is overruled.
 III
Appellant contends, in his third assignment of error, his right to due process of law was violated by the prosecutor's improper comments during closing argument. We disagree.
The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott
(1991), 51 Ohio St.3d 160, 165, certiorari denied 112 L.E.2d 596. A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. Statev. Apanovitch (1987), 33 Ohio St.3d 19, 24. It is based upon this standard that we review appellant's assignment of error.
In support of this assignment of error, appellant contends the prosecutor improperly argued that other evidence corroborated the testimony of Larry Ingram. Appellant refers to the following statements made by the prosecutor during closing argument. First, the prosecutor stated: "Larry knows the girl, Roberta Peters, was shot in the left side of the head. Lucky guess or corroboration?" Tr. Vol. VI at 29. Appellant contends Larry Ingram never indicated, during his testimony, which side of the head Ms. Peters was shot and that this testimony bolstered Larry Ingram's testimony.
Second, appellant refers to another statement appellant made to the jury, during closing argument, in support of this assignment of error. The prosecutor argued that Ingram's testimony must be true because he knew information that the state only learned about in 1997. Specifically, the prosecutor stated:
 Larry Ingram has information that he could not, absolutely without question could not, have gained from the detectives back then, the FBI in 1986 or the media at any point in time. That is, that this apron has a bullet hole in it. And you can subscribe all you want the information, every detail that he has, every detail that Kathy Silverman has, to having been given by the police, prosecutors, the media, whatever you want, but this is physical evidence, physical evidence that Larry Ingram knows about that even the police didn't know about. Tr. Vol. VI at 84.
Appellant contends Larry Ingram never testified that the apron had a bullet hole in it and never testified that an apron was involved in any way with the shooting.
Because defense counsel did not object to the above two statements, at trial, we must analyze this assignment of error under a plain error analysis. In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. D'Ambrosio (1993),67 Ohio St.3d 424, 437; State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
We find the statements, made by the prosecutor, during closing argument, do not rise to the level of plain error. Although it was the coroner who testified that Ms. Peters was shot in the side of the head, and not Larry Ingram, we agree with the state that the thrust of the prosecutor's comment was that Larry Ingram knew Ms. Peters had been shot in the head. As to the second statement, we again agree with the state that the prosecutor's comment was that Larry Ingram knew some kind of clothing had been shot through, although he did not testify that the article of clothing was an apron. By making these statements, the prosecutor was merely emphasizing the fact that Larry Ingram knew information that he could not have known from anyone but one of the participants to the crime. We do not find the outcome of the trial clearly would have been different but for these statements by the prosecutor.
Appellant's third assignment of error is overruled.
 IV
In his final assignment of error, appellant contends his right to due process of law was violated because his conviction is based on insufficient evidence. We disagree.
On review for sufficiency of the evidence, a reviewing court is to examine the evidence, at trial, to determine whether such evidence, if believed, would support a conviction. State v. Jenks
(1991), 61 Ohio St.3d 259. Appellant argues there was no evidence, introduced at trial, indicating appellant had the specific intent to cause the death of Ms. Peters. We find the testimony presented, at trial, indicates otherwise. Appellant helped co-defendant Duncan catch Ms. Peters as she attempted to flee from the Merkle residence. Appellant also stood in front of Ms. Peters as co-defendant Duncan placed an apron over Ms. Peters' head prior to shooting her.
Clearly, this evidence established appellant's participation in the murder of Ms. Peters. Appellant was not in another part of the house, unaware of what his co-defendant was doing, at the time co-defendant Duncan shot Ms. Peters. As such, we find there was sufficient evidence, which if believed by the jury, would support appellant's conviction for aggravated murder.
Appellant's fourth assignment of error is overruled.
 Cross-Appeal
We will address the two assignments of error appellee raises in its cross-appeal simultaneously. Based upon our disposition of appellant's four assignments of error, we find the issues raised by the state, in its cross-appeal, are moot.
For the foregoing reasons, the judgment of the Court of Common Pleas, Licking County, Ohio, is hereby affirmed.
By: Wise, J., Gwin, P. J., concurs. Hoffman, J., concurs separately.
I fully concur in the majority's decision to overrule appellant's third and fourth assignments of error and appellee's cross appeal.
I further concur in the majority's decision to overrule appellant's first assignment of error. I write separately only to express my disagreement as to the portion of its opinion regarding whether the trial court should have broken down and excluded portions of Duncan's statements. If Duncan's statements were hearsay, the trial court should have excluded the portion of Duncan's statements implicating appellant pursuant to Williamsonv. U.S. (1994), 512 U.S. 594, and Richardson v. Marsh (1987),481 U.S. 200. See also, this Court's opinion in State v. Stapleton
(Aug. 31, 1998), Perry App. No. 97CA62, unreported.
However, I find the statements by Duncan implicating Graham (Majority Opinion at 5, nos. 3 and 4) are not hearsay pursuant to Evid.R. 801(D)(2)(e). Accordingly, the trial court did not commit error in admitting this testimony.
Finally, although I concur in the majority's rationale for overruling appellant's second assignment of error, I would do so for the additional reason the record supports the trial court's conclusion the delay in prosecution was justified. The record demonstrates 1) it was reasonable for the prosecutor to conclude prosecution based solely upon Ms. Silverman's testimony would not be reliable to the extent the prosecutor could expect to prove appellant's guilt beyond a reasonable doubt; and 2) appellee did not learn of Larry Ingram as a witness until June of 1995.
JUDGE WILLIAM B. HOFFMAN.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.