OPINION *Page 2 
{¶ 1} Appellant Tabitha Rogers appeals her conviction, in the Richland County Court of Common Pleas, on one count of aiding or abetting sexual battery and one count of aiding or abetting sexual imposition. The relevant facts leading to this appeal are as follows.
 {¶ 2} In late May, 2006, Alicia Drengberg, a former co-worker of appellant, turned twenty-one years old. Appellant contacted Alicia several times asking if Alicia would go out to celebrate with appellant and her husband, Michael C. Rogers. Alicia finally agreed to go out with appellant and Michael, and the date of June 23, 2006 was selected. Appellant and Michael picked Alicia up at the Mansfield apartment of Alicia's friend, Kristin Green. They proceeded to George's Bar in Shelby, Ohio, arriving at around midnight on June 24, 2006. When they arrived, appellant supplied Alicia with one-half of a white pill, which appellant told her would help prevent a hangover.
 {¶ 3} Between midnight and the time of closing, Alicia consumed four mixed drinks, two beers, and two shots of Tequila. At the end of the evening, appellant had to assist the intoxicated Alicia to the car. As the three left George's, with Michael driving, Alicia had to get out of the car and throw up in the parking lot. At a stop at a nearby gas station, Alicia again threw up. Appellant and Michael told Alicia that the party was going to continue at their apartment in Lexington, Ohio, even though Alicia had planned on returning to Kristin Green's apartment. Before reaching Lexington, Alicia threw up on herself in the backseat. Michael eventually carried her into the apartment because of her intoxicated state. *Page 3 
 {¶ 4} Alicia threw up two more times, and finally tried resting on the bathroom floor inside the Rogers' apartment. Appellant came by with a t-shirt and boxer shorts for Alicia to wear. Appellant completely undressed Alicia, and then assisted her in putting on the aforesaid undergarments. Michael then carried Alicia to the bedroom floor. Alicia threw up again, this time into a Styrofoam bucket. She then passed out.
 {¶ 5} Later that night, Alicia awoke when appellant entered the bedroom and asked her if she would perform oral sex on Michael. Alicia said she would not, to which appellant replied: "I thought you were a better friend than that." Tr. at 197. After appellant left the bedroom, Alicia contemplated leaving through the window, but she still felt too sick and intoxicated. She then passed out again.
 {¶ 6} Alicia next awoke to Michael lying down behind her. He proceeded to pull down her boxer shorts and rub her vaginal area with his hand. Alicia sensed that Michael was masturbating as well. She then felt Michael remove her tampon and commence vaginal intercourse with her. After about two minutes of intercourse, Michael got up and quietly left the bedroom. A short time later, appellant came into the bedroom and inserted a new tampon into Alicia.
 {¶ 7} Still too sick and intoxicated to get up or use her cell phone, Alicia passed out again. She woke up at about 11 AM on June 24, 2006, and gathered her clothes, finding her original underwear under a pile of laundry. After Alicia got dressed, appellant gave her some pop and crackers, and then drove her back to Kristin Green's apartment. Appellant asked her if she remembered anything from the night before. Alicia, somewhat fearful, pretended she could not remember. *Page 4 
 {¶ 8} Alicia met up with her roommate, Amanda Cottrell, at Kristin Green's place. Alicia was upset, and soon told Amanda that she had been sexually assaulted by Michael the night before. Alicia refused, however, to contact law enforcement authorities.
 {¶ 9} The next day, June 25, 2006, after contemplating for some time, Alicia telephoned Todd Yarger, her ex-boyfriend. Upon hearing about the incidents of June 23rd and 24th, Yarger, an Ohio National Guardsman, immediately went to Alicia's apartment and convinced her to make a report with the Lexington Police Department. After speaking with detectives and filling out a written statement, Alicia went to the hospital for an examination by Jodi Flynn, a S.A.N.E. nurse. Alicia later turned over to police some of her clothing from the day before.
 {¶ 10} As a result of the ensuing investigation, as further discussed infra, the Richland County Grand Jury indicted appellant on one count of aiding or abetting sexual battery, one count of aiding or abetting gross sexual imposition, and one count of aiding or abetting sexual imposition. Michael Rogers was similarly indicted. Both appellant and Michael pled not guilty, and agreed to a joint trial.
 {¶ 11} The matter proceeded to a jury trial on October 4-5, 2007. The jury found appellant guilty of one count of aiding or abetting sexual battery and one count of aiding or abetting sexual imposition, but not guilty of aiding or abetting gross sexual imposition.[1] On October 8, 2007, the trial court sentenced appellant to four years in prison. *Page 5 
 {¶ 12} On October 15, 2007, appellant filed a notice of appeal. She herein raises the following two Assignments of Error:
 {¶ 13} "I. THE JURYS (SIC) VERDICT IN FINDING THE DEFENDANT-APPELLANT GUILTY IN COUNT I OF AIDING AND ABBETTING (SIC) IN SEXUAL BATTERY [AND] IN COUNT III OF AIDING AND ABBETTING (SIC) IN SEXUAL IMPOSITION WAS CONTARY (SIC) TO THE MANIFEST WEIGHT OF THE EVIDENCE THUS THE CONVICTION WAS IN VIOLATION OF ARTICLE I, 10 OF THE OHIO CONSTITUION AND THESIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 {¶ 14} "II. TRIAL COUNSELS (SIC) FAILURE TO OBJECT TO CONSOLITDATE (SIC) THE DEFENDANT-APPELLANT'S TRIAL WITH THAT OF THE DEFENDANT-APPELLANT HUSBAND' (SIC) TRIAL WAS COMPELLINGLY PREJUDICIAL TO THE DEFENDANT-APPELLANT AND AMOUNTS TO INEFFECTIVE ASSISTANCE OF COUNSEL."
 I. {¶ 15} In her First Assignment of Error, appellant contends her conviction on the two aiding and abetting counts was against the manifest weight of the evidence. We disagree.
 {¶ 16} Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed *Page 6 
and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717. See also, State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717.
 {¶ 17} Ohio's complicity statute, R.C. 2923.03, reads in pertinent part as follows:
 {¶ 18} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 19} "(1) Solicit or procure another to commit the offense;
 {¶ 20} "(2) Aid or abet another in committing the offense;
 {¶ 21} "(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
 {¶ 22} "(4) Cause an innocent or irresponsible person to commit the offense.
 {¶ 23} "* * *"
 {¶ 24} The underlying offenses at issue in the case sub judice are as follows:
 {¶ 25} R.C. 2907.03(A)(2) Sexual Battery: "No person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."
 {¶ 26} R.C. 2907.06(A)(1), (2) Sexual Imposition: "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: *Page 7 
 {¶ 27} "(1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.
 {¶ 28} "(2) The offender knows that the other person's, or one of the other person's, ability to appraise the nature of or control the offender's or touching person's conduct is substantially impaired."
 {¶ 29} At the trial in the case sub judice, as discussed in our recitation of facts above, the State presented the testimony of the victim, Alicia, as well as her roommate, Amanda, and Alicia's ex-boyfriend, Todd Yarger. The S.A.N.E. nurse, Jodi Flynn, told the jury that although she did not observe signs of sexual trauma during the examination, she would not have expected to observe same based on the history provided by Alicia. Tr. at 332.
 {¶ 30} The State also presented the testimony of Sergeant Troy Weaver of the Lexington Police Department. Weaver interviewed Michael after the report was made by Alicia. Michael eventually admitted to having engaged in sexual activity with Alicia on the night of the birthday celebration; however, Michael claimed that he was asleep with appellant when he felt movement on top of him. Michael told Weaver that as he became fully awake, Alicia was exiting the bedroom and going toward the bathroom. Tr. at 289-290. Weaver also spoke to appellant during the investigation. Appellant told him she had removed Alicia's clothing in the bathroom for the purpose of making her more comfortable. When asked why she had reinserted a tampon into Alicia after the encounter with Michael, appellant gave no comment or explanation. Tr. at 292. The jury also heard from prosecution witnesses from the Ohio BCI, who linked to Michael's DNA *Page 8 
the semen found in Alicia's underwear, on one of her tampons, and from vaginal swabs in the rape kit. Tr. at 350-370.
 {¶ 31} During the defense phase of the trial, appellant took the stand. She insisted that she had turned her head away when she had undressed Alicia, and had not observed whether Alicia was wearing underwear or not. However, she admitted on cross-examination that her written statement to the police did set forth that she had taken off both Alicia's pants and underwear. Tr. at 404. Appellant claimed that she questioned the drunken Alicia about any interest in performing oral sex on Michael because she had previously experienced other women going behind her back to get to the men in her life. Tr. at 385-386. Appellant testified that the question was prompted because Alicia had been "flirting with my husband all night at the bar." Tr. at 386. During cross-examination, the prosecutor questioned appellant on why she agreed to bring Alicia to the apartment in light of this alleged flirting. Tr. at 400. Appellant also flatly denied any knowledge of Alicia's tampon or any involvement in replacing it. Appellant's general version of events was that she helped Alicia change into clean undergarments, and then went to bed. She claimed that Michael shook her awake later at about 6 AM, telling her that the two of them should move over to the living room. Tr. at 388. According to appellant, Michael later demanded to have Alicia quickly returned home. Id.
 {¶ 32} Appellant asserts, inter alia, that Alicia's intoxication was voluntary, and that the evidence does not show that Alicia objected to going to the Rogers' apartment. She also challenges the import of the unspecified white pill that Alicia said had been provided by appellant, as Alicia did not initially report this detail to the police or the *Page 9 
examining nurse. Appellant further submits that Alicia's full clothing removal may have been necessitated by soiling from throwing up. However, upon review of the record in this case as summarized supra, we find the jury could have properly inferred that appellant's acts were accomplished to assist or encourage the sexual assault on the victim, and thus we hold that the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's conviction be reversed and a new trial ordered.
 {¶ 33} Appellant's First Assignment of Error is therefore overruled.
 II. {¶ 34} In her Second Assignment of Error, appellant argues she was deprived of the effective assistance of trial counsel by her attorney's decision not to object to the State's motion for consolidation of appellant's and Michael Rogers' trials. We disagree.
 {¶ 35} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. Trial counsel *Page 10 
is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie
(1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267.
 {¶ 36} Appellant first argues that trial counsel was ineffective for failure to seek severance from Michael. In analyzing issues of joinder and severance, the general rule is that the defendant bears the burden under Crim. R. 14 to prove prejudice and that the trial court abused its discretion in denying severance. State v. Coley (2001),93 Ohio St.3d 253, 259, 2001-Ohio-1340, citing State v. Torres, 66 Ohio St.2d 340,421 N.E.2d 1288, syllabus. In State v. Thomas (1980), 61 Ohio St.2d 223,225, 400 N.E.2d 401, the Ohio Supreme Court noted: "Joinder of defendants and the avoidance of multiple trials is favored in the law for many reasons. Joinder conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." Hence, "[j]oinder of defendants is the rule rather than the exception and the burden is on the defendant to establish any resulting prejudice." State v.Fannin, Cuyahoga App. No. 80014, 2002-Ohio-4180, ¶ 40 (citations omitted).
 {¶ 37} In the case sub judice, the victim, Alicia, provided detailed evidence as to the sexual assault by Michael at the apartment. Alicia had cooperated with the police, provided statements, and allowed the preparation of a rape kit for evidence. We are unpersuaded that severance of the two defendants in this case would have kept incriminating evidence from the jury, such that failure of severance could be deemed prejudicial. Furthermore, it is well-established that tactical or strategic trial decisions, *Page 11 
even if ultimately unsuccessful, do not generally constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558,651 N.E.2d 965.
 {¶ 38} Appellant secondly contends that the existence of consolidation in this case effectively forced her to take the stand in light ofBruton v. U.S. (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 andState v. Moritz (1980), 63 Ohio St.2d 150, 407 N.E.2d 1268. InBruton, "* * * the United States Supreme Court held that, in a joint trial, the admission of a co-defendant's confession that implicated the defendant, where the co-defendant did not take the stand, denied the defendant his constitutional right of confrontation and constituted prejudicial error." State v. Daniels (1993), 92 Ohio App.3d 473, 485,636 N.E.2d 336. Nonetheless, based again on the evidence supplied by the victim in this case, and the fact that neither defendant confessed or implicated the other regarding the sexual assault, we are unpersuaded that trial counsel failed to provide reasonable representation in regard to Bruton by failing to seek severance of defendants.
 {¶ 39} We find appellant was not deprived of the effective assistance of trial counsel. Appellant's Second Assignment of Error is therefore overruled.
 {¶ 40} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.
 Wise, J. Gwin, P. J., and Farmer, J., concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed. Costs assessed to appellant.
[1] Michael Rogers was found guilty on three counts, and has separately appealed. See Richland App. No. 2007-CA-0106. *Page 1